IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 2:22-cr-00993-RMG |
| vs. | |
| **JONATHAN RAMACI** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

On April 25, 2024, the Defendant Jonathan Ramaci pled guilty to one count of wire fraud and one count of filing a false individual tax return pursuant to a written plea agreement. The United States submits this memorandum in advance of Defendant's sentencing. The United States Probation Officer ("USPO") determined that Ramaci's total offense level for Ramaci is a 17, which results in a guideline range of 24 to 30 months. As will be discussed in more detail below, the Government believes the advisory guidelines were properly calculated by the USPO in the Presentence Report ("PSR"). Further, a departure and/or variance is not appropriate. The Government, therefore, requests that this Court sentence Ramaci to 24 months imprisonment.[1]

I.      **FACTUAL AND PROCEDURAL BACKGROUND.**

In January 2024, a grand jury returned a 24-count Superseding Indictment against Ramaci. ECF No. 85.[2] Ramaci ultimately pled guilty to two counts of the Superseding Indictment pursuant

---

[1] In paragraph 11 of the plea agreement the Government agreed to not recommend a sentence more than 24 months, exclusive of fees, monetary penalties, and/or forfeiture, so long as the Defendant complied with the terms of the plea agreement. This recommendation is not binding on the Court or USPO. *See* ECF No. 109.

[2] Ramaci was initially charged in December 2022 in a three-count Indictment. *See* ECF No. 2. As it relates to the Superseding Indictment, as set forth in paragraphs 23 through 64 of the PSR, counts 1 through 7 charged Ramaci in a wire fraud scheme relating to his company, Elements of Genius, and the diversion of investor funds for his own personal use. Counts 8 through 13 charged Ramaci

to a written plea agreement – Count 8 (wire fraud pertaining to an EIDL loan) and Count 17 (filing a false individual tax return for the tax year 2021). ECF No. 95. Although Ramaci pled guilty to only two counts, he agreed in his Plea Agreement that the counts the Government agreed to dismiss would be considered relevant conduct pursuant to § 1B1.3 of the United States Sentencing Commission Guidelines. *See* ECF No. 109, ¶ 3.

As is evidenced by the Superseding Indictment and the PSR, Ramaci was not involved in one-off criminal activity. Over a period of many years, Ramaci was defrauding investors of his company, Elements of Genius,[3] the IRS, and the Small Business Administration ("SBA"). As it relates to Ramaci's tax liability, while Ramaci was knowingly diverting funds from Elements of Genius and/or paying his expenses directly out of Elements of Genius' bank account, he was simultaneously not accurately reporting his income to the IRS or, in some years, failing to file tax returns. *See* PSR ¶ 106 and 109. The investigation revealed that for the tax years 2017 through 2021, Ramaci owes $289,531 to the IRS for unreported income. *See* PSR ¶ 109.

Ramaci also defrauded the SBA by taking advantage of a loan program during a national emergency. During the application process for both Paycheck Protection Program ("PPP") and Emergency Injury Disaster ("EIDL") loans, the applicant had to certify to the SBA and/or its approved third-party lenders that the information being provided as it related to a company's

---

with wire fraud for his fraudulent applications(s) and receipt of PPP and EIDL loan funds. Count 14 charged Ramaci with money laundering pursuant to Title 18, United States Code, Section 1957. Finally, counts 15 through 24 charged Ramaci with various tax offenses for making false statements and failing to file, both individual and corporate returns.

[3] The Government does not intend to brief the facts of this wire fraud scheme because Ramaci agreed in his plea agreement to pay restitution for this conduct in the amount of $1,009,684.00. *See* ECF No. 109, ¶ 2B. As the PSR sets forth, for nearly five years, Ramaci was using a portion of the funds raised from investors that were intended for the development of the Wellnest device to fund his personal life. The embezzled investor funds are the basis of the agreed restitution figure. *See* PSR ¶¶ 85-86.

2

payroll, gross revenues, and costs of goods sold was accurate. As set forth in the PSR, Ramaci made material misrepresentations pertaining to both Elements of Genius and MLL that were relied on by the SBA in the funding of the loans. *See* PSR ¶¶ 100 and 101. Moreover, Ramaci applied for a PPP loan in his name as a sole proprietor and submitted a fraudulent Schedule C that misrepresented MLL's gross receipts to the SBA's approved third-party lender. *See* PSR ¶ 102. In total, Ramaci received $214,240 from the SBA based on the fraudulent applications he submitted.[4]

Ramaci's sentencing is scheduled for January 22, 2025.

## II.    THE PRESENTENCE REPORT AND OBJECTIONS.

Ramaci initially raised several objections to the PSR. The objections raised by Ramaci can, generally, be categorized into two "buckets" – portions of the PSR pertaining to the investor fraud scheme and portions of the PSR pertaining to the tax loss and relevant conduct.

The Government and defense have been in discussions in advance of Ramaci's sentencing, and it is the Government's understanding that Ramaci plans to withdraw all objections at sentencing except for his objection to the application of relevant conduct. *See* Defendant's Sentencing Memorandum, ECF No. 135-1, pg. 16, n. 3.

i.    Objections pertaining to the investor fraud scheme: Nos. 1, 2, 3, 4, 5, and 6.

The objections raised by Ramaci pertaining to the investment fraud scheme do not affect the guideline range, and the Government believes they were set forth in the offense conduct of the

---

[4] As the Court is aware, Ramaci was also charged with attempted wire fraud for the loan applications that he submitted but were not funded. Although not binding on the Court, the Government agreed in the plea agreement that, for the purposes of calculating Ramaci's loss amount for this fraud scheme, the actual loss figure of $214,340 was the appropriate loss amount. *See* ECF No. 109, ¶ 10A. The PSR also adopted the actual loss figure for the guidelines calculation.

PSR to give this Court information pertinent to the Indictment and the history and characteristics of the Defendant. As mentioned in an earlier footnote, Ramaci has agreed as part of his plea agreement to pay restitution in the amount of $1,009,684.00 to investors of Elements of Genius, which reflects the amount of money diverted from investors. *See* ECF No. 109, ¶ 2B.

Although the Government believes the Defendant will withdraw these objections at sentencing, should the Defendant choose to proceed on any of these objections, the Government would set forth that the Court may choose, pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B), to not rule on the objection as it will not affect sentencing; however, should the Court deem a ruling necessary, the Government would ask this Court to overrule each objection and will be prepared at sentencing to address each of the objections. Moreover, should the Defendant request the Court to not impose the agreed restitution, the Government would set forth that the paragraphs pertaining to the investment fraud scheme are relevant to the Court's decision on restitution.

ii.      Objections pertaining to tax loss: Nos. 7 and 8.

Ramaci's objections Nos. 7 and 8 pertained to the PSR's calculated tax loss and the application of relevant conduct. In a text order dated December 9, 2024, this Court ordered defense counsel to submit any expert reports that they intended to offer at sentencing to refute the tax loss by January 1, 2025. ECF No. 128. The defense filed a status report on January 1, 2025, indicating that it only planned to submit an expert report for mitigation purposes. ECF No. 130. The Government and defense consulted based on the Government's concern it would not be prepared to address the mitigation arguments raised by the expert report. The parties have reached an agreement that no expert reports will be submitted at sentencing, or with the sentencing

memorandum, that pertain to tax loss. Further, it is the Government's understanding that Ramaci will be withdrawing his objections to the calculated tax loss.

However, it is the Government's understanding that the Defendant plans to proceed on his objection No. 8 and the application of relevant conduct. The plea agreement has the following agreement between the parties as it relates to relevant conduct:

> Provided the Defendant complies with all the terms of this Agreement, the United States agrees to move to dismiss the remaining counts of the Indictment at sentencing. The Defendant understands that the Court may consider these dismissed counts as relevant conduct pursuant to §1B1.3 of the United States Sentencing Commission Guidelines. Further, provided the Defendant complies with all terms of this agreement, the United States agrees to not prosecute or bring additional charges against the Defendant for any other offenses arising out of or related to the allegations contained in the Superseding Indictment.

*See* ECF No. 109, ¶ 3. Based on the Defendant's own agreement, the Government would ask the Court to overrule this objection.

As for the application of relevant conduct to the tax loss, the PSR's loss determination for the tax counts in paragraph 111 includes relevant conduct. Based on the statements in Defendant's sentencing memorandum and agreement with the Government, it seems the Defendant agrees to the relevant conduct application for the tax loss.

As for the application of relevant conduct to the SBA loan fraud scheme, in the parties' plea agreement, in addition to the relevant conduct provision of the plea agreement, the parties agreed that the loss for this fraud scheme was $214,340. *See* ECF No. 109, ¶ 10A. This agreement gives the Defendant the benefit using the actual loss figure of his SBA loan fraud scheme, not the intended loss figure.[5] Based on the parties' agreement, which favors the Defendant, and the

---

[5] The total amount of loans that Defendant applied for is approximately $931,000. As this Court is aware, only $214,340 was funded.

Defendant's own agreements, the Government would ask that this Court overrule the Defendant's objections to the application of relevant conduct.

    iii.    <u>Objection No. 9</u>

The Defendant's final objection is to the PSR's finding that no factors support a variance. The Government believes that after an evaluation of the § 3553(a) factors, a variance is not appropriate and would ask that this Court sentence the Defendant to 24 months.

## III.    A DEPARTURE IS NOT WARRANTED.

In his sentencing memorandum, the Defendant discusses several sections of the Guidelines, which he believes support a departure to probation. *See* ECF No. 135-1, pgs. 19-27.[6] At the outset, the USPO in its PSR did not reference any portions of the Guidelines that would support a departure. *See* PSR ¶ 205.

When discussing the facts in support of a departure, the Defendant acknowledges that it is often "exceptional" cases where civic and community work and military service led to a departure and, further, the Defendant has been afforded all three acceptance of responsibility points, which contemplate post-arrest conduct. While the Court certainly can, and should, consider Defendant's community service and civic work in fashioning a sentence that is sufficient but not greater than necessary, the Government does not believe these factors support a departure. *See* § 5H1.11.

Finally, the additional mitigating factors that Defendant raises do not warrant a departure. Specifically, the Government would respectfully disagree with the assertion that the Defendant made any significant effort to cooperate. While the Defendant did submit a letter to the

---

[6] It is worth noting that many of the facts and the Defendant's characteristics that support Defendant's request for a departure are also used to support a § 3553(a) variance.

Government in an effort to provide information about other individuals' criminal conduct, the Government advised Defendant's counsel that it was not information that was unknown to the Government and/or would lead to a § 5K1.1. The Defendant then chose not to come speak to the Government.

## IV.   EVALATION OF THE STANDARDS SET FORTH IN 18 U.S.C. § 3553(a) SUPPORT A SENTENCE OF 24 MONTHS.

The sentencing statute, 18 U.S.C. § 3553(a), requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[7]   In order to determine the "particular" sentence to impose, the Court must consider the familiar statutory factors listed in §3553(a)(1)-(7). Two of the statutory factors that the Court must consider are (1) the advisory guidelines range set by the Sentencing Commission and (2) the Commission's policy statements are factors to be considered. *See* §3553(a)(4) and (a)(5). Further, the Advisory sentencing guidelines "should be the starting point and the initial benchmark" in determining the appropriate sentence. *See Gall v. United States*, 522 U.S. 38 (2007).

Here, as explained below, an examination of the § 3553(a) factors support a significant sentence for Ramaci and, further, a sentence of incarceration is appropriate and necessary to comply with the purposes set forth for sentencing pursuant to § 3553(a). Ramaci's conduct was serious and was not limited to a single occurrence. Ramaci submitted multiple fraudulent PPP and EIDL loans and, further, defrauded the IRS over a period of many years.

---

[7] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

It is also worth noting that as part of his plea agreement, in addition to the restitution owed for the offenses of conviction, Ramaci has agreed to pay $1,009,684.00 in restitution, which represents investor funds he diverted from Elements of Genius for his own personal use.[8] As will be discussed below, a sentence of 24 months, which is the low end of the guideline recommendation, is appropriate and is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

## A. Nature of Offenses and History and Characteristics of Defendant – § 3553(a)(1).

### *Nature of the Offense*

The offenses to which Ramaci has pled guilty are serious offenses. As it relates to the fraud Ramaci committed on the SBA, he systematically submitted fraudulent PPP and EIDL loan applications in his scheme to defraud the SBA and its approved third-party lenders and took advantage of an economic disaster caused by a global pandemic. Ramaci's conduct exploited the federal government who was in a rush to quickly disburse funds to businesses that were affected by the COVID-19 pandemic. In perpetrating his fraud on the SBA and its approved third-party lender, Capital Plus Financial, LLC, Ramaci submitted a fraudulent Schedule C, which falsely represented his income from MLL. As for the two EIDL loans that Ramaci applied for, he materially misrepresented the "costs of goods sold" for MLL and Elements of Genius, respectively, on both applications. Moreover, as set forth in paragraph 103, of the PSR, Ramaci attempted to apply for two additional PPP loans. PSR ¶ 103. The investigation revealed that when Ramaci was asked to submit additional payroll verification by Wells Fargo, he submitted a bank statement that falsely represented payroll.

---

[8] Paragraph 2 of the plea agreement asks this Court to impose this restitution figure. *See* ECF No. 95.

As for Ramaci's tax offenses, for the tax years in question,[9] Ramaci failed to file tax returns for two tax years – 2017 and 2018 – and filed false returns for the tax years 2019[10] through 2021. For the years that Ramaci failed to file, the evidence in the investigation clearly established that he was aware of the need to file tax returns. In fact, he had worked with a CPA to prepare his taxes for the previous tax years. *See* PSR ¶ 105. As it relates to the false tax returns that Ramaci did file, Ramaci was sophisticated in his underreporting. The investigation revealed that Ramaci paid many personal expenses directly out of Elements of Genius. For example, Ramaci paid his personal rent, family's health insurance premiums, and personal credit cards directly out of Elements of Genius' bank account and for the tax years 2019 through 2021. All these expenses were reportable and taxable income.

As clearly set forth herein, and in the PSR, Ramaci committed two serious fraud offenses that impacted two government agencies and spanned a period of several years, and his conduct weighs in favor of a custodial sentence.

---

[9] Ramaci has tax liabilities to the IRS that predate the tax years in question, which are discussed in the "History and Characteristics" portion of this memorandum.

[10] The Government would note for the purposes of the Court's evaluation of the § 3553(a) factors, that the discovery in the case revealed that Ramaci did not file his 2019 tax return until after he was originally indicted. As mentioned earlier in this sentencing memorandum, Ramaci was first indicted in December 2022, and filed his 2019 taxes in July 2023 because the IRS had extended the filing deadline due to the COVID-19 pandemic. In Ramaci's filed 2019 taxes, he did accurately report what he diverted from Elements of Genius to MLL during the 2019 tax year; however, he failed to account for the expenses that he paid directly out of Element of Genius' bank account. *See* PSR ¶ 108.

*History and Characteristics of the Defendant*

Ramaci is being sentenced by this Court for two separate fraudulent schemes and agreed to a restitution figure for the investor money he diverted from Elements and Genius, which was a third fraud scheme he was charged with in the Superseding Indictment.[11]

The Defendant has submitted a 43-page sentencing memorandum and many letters highlighting Defendant's background, history, and characteristics, which Defendant sets forth warrants a non-custodial sentence.  The Government respectfully disagrees.

At the outset, the Government would refer the Court to the Defendant's own disclosures in the PSR.  There is no mention by Ramaci of his child support delinquencies in the state of Massachusetts for one of his children from a previous relationship.  Discovery and interviews in the investigation revealed that Ramaci is not current on his child support payments and in his various financial disclosures.  In that litigation, he did not accurately state his income, and, in fact, what he reported to the State of Massachusetts was inconsistent with what he was reporting to the IRS and, further, with what he was receiving and/or paying himself from Elements of Genius.  The Government would also note that on the EIDL applications submitted by Defendant, he certified he did *not* have any child support obligations, which was an additional fraudulent misrepresentation.

In the Defendant's apology letter, Ramaci appears to use the pandemic as an excuse for his tax and SBA fraud offenses, and, further, throughout Defendant's memorandum it is portrayed that the criminal conduct was out of character.  What is not mentioned by the Defendant is that he was

---

[11] The Government would refer to the Court to the submitted victim impact statements by a handful of investors should the Court deem these pertinent in evaluating the § 3553(a) factors and fashioning a sentence.

audited by the IRS in 2011 and 2012 and still has taxes, to include penalties, due and owing to the IRS for these tax years in excess $700,000.[12] For the tax years 2011 and 2012, as established by the audit files,[13] Ramaci underreported his income and incorrectly claimed bad debt. The audit file is extensive and lays out for Ramaci the errors in his tax reporting for 2011 and 2012. The conduct of the Defendant for the tax years 2011 and 2012 is eerily similar to the conduct for which he has plead guilty and, further, established his culpability for the crimes he is being sentenced for by this Court. Further, the tax loss Ramaci is being held accountable for pre-dates the pandemic, so his reliance on the pandemic as a justification for his conduct is misguided and ignores the relevant conduct that he is being held accountable for.

Ramaci also spends a great deal of his sentencing memorandum discussing his family, to include his two children with his current wife. As exhibits, Ramaci also includes letters of support from various family members. The Government would note that Ramaci has seven children in total – five of whom are grown. His eldest daughter provided the Government with a letter that she asked to be presented to the Court. *See* Letter from Liesel Smith, which has been submitted *in camera*. Ms. Smith's letter paints a starkly different image of the Defendant than that which he has portrayed to the Court.

Although Ramaci does not have a significant criminal history, which in some instances could favor a lesser period of incarceration, he has been given credit for this in his PSR. *See* PSR ¶ 145 (applying zero-point offender adjustment). Finally, the records and information submitted by the Defendant that evidence the Defendant is being treated for certain medical conditions, to

---

[12] The Government would note that the original tax due and owing, without penalties, was approximately $275,000.

[13] These files were produced in discovery and the Government can make them available to the Court upon request. Further, should it become necessary at sentencing, the Government will have a witness prepared to discuss this audit.

include anxiety and depression, do not support a variance to a non-custodial sentence, and he can be adequately treated by the Bureau of Prisons.

It is the Governments belief that when this Court weighs the nature of the offense and the history and characteristics of the Defendant, even considering the arguments propounded by the Defendant, a period of incarceration is not only appropriate, but necessary to reflect the seriousness of the offenses.

**B.      Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant – §3553(a)(2)(A)-(C).**

Economic crimes and white-collar offenses must be met with sentences commensurate with the seriousness of the crimes themselves. Concern that "white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses" was among the motivations for the Sentencing Reform Act that gave rise to the United States Sentencing Guidelines. S. Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3260. Among the principal architects of the guidelines was Justice Stephen Breyer, an original member of the Sentencing Commission. He explained that the Guidelines required a "short but definite period of confinement" for all but "the least serious cases of these white-collar offenses (level '6' or less)[.]" Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 22 (1988). Not only did the applicable Guidelines reflect the severity of white-collar offenses, but it also resolved "significant disparities" observed in data gathered by the Commission on how white-collar crimes were treated at sentencing relative to equally-serious non-white-collar offenses in the pre-guideline era. *Id*. at 20. In Harley's case, we are not in the arena of the least serious cases, and as such, imprisonment is not only called for but required. *See* USSG § 5C1.1.

Moreover, a sentence of incarceration addresses the deterrence factor, which is so critical in corruption and fraud cases. Fraud is "'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005)). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment." *Id*.

The two separate frauds committed by Ramaci are serious offenses and warrant a significant period of incarceration to promote just respect for the law and deter future conduct. A significant period of incarceration is necessary for specific and general deterrence. Based on the Defendant's own disclosures in the PSR, he continues to make efforts to develop products and raise money for a company named Great Products. *See* PSR ¶ 168. In Defendant's sentencing memorandum, he discusses the formation of iCache. *See* ECF No. 135-1, pg. 10. As this Court is aware from its litigation history with Ramaci, and from the PSR for this case, Ramaci's prior company, iCache was involved in a civil lawsuit based on investor claims of inappropriate use of funds.[14]

Given the Defendant's history, and his plans with Great Products based on his own admissions, a period of incarceration ensures that Ramaci is deterred. Should Ramaci continue his business efforts post-incarceration, it will ensure that he accurately reports his income, which includes personal expenses paid by any company he may own and/or control, and appropriately handles investor funds. Further, although the lending pursuant to the CARES Act has completed,

---

[14] *See* Case No. 2:12-cv-2323-RMG; *see also* PSR ¶ 88.

the undersigned has no doubt that there will be future loan programs that are created to assist during economic disasters. A period of incarceration for Ramaci will serve as a deterrent for future fraud and those who think they can get "free" money without any accountability for their actions.

### C.     The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct – §3553(a)(6).

Congress has directed sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6). "[T]he kind of disparity with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case." *United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds* by 552 U.S. 1089 (2008) (internal quotation marks omitted). Thus, the Court is tasked with evaluating sentencing disparities nationwide, rather than between co-defendants. *See id*. "The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government." *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996).

Ramaci committed tax fraud and wire fraud, both of which defrauded the federal government. Although the Defendant points to a handful of cases within this District for support of a probationary sentence, when the facts and evidence of Defendant's crimes are reviewed, a period of incarceration would not create any unwarranted disparity. Further, for every probationary sentence that was imposed, there are cases within this District where defendants have received more than the requested 24-months for crimes similar, and in some instances not as extensive, to the Defendant's crimes.

**D.      The Need to Provide Restitution – §3553(a)(7).**

One of the factors that the Court must consider in fashioning a sentencing is the need to provide restitution.  In this case, Ramaci owes restitution to both the IRS and the SBA for the fraud schemes to which he plead guilty.  Further, as part of his guilty plea, Ramaci agreed to pay restitution in the amount of $1,009,684.00 to investors in Elements of Genius.  *See* ECF No. 109, ¶ 2B.  Based on the restitution owed, and the recommended restitution payment schedule, it is unlikely that the Government and investors in Elements of Genius will be made whole.

**V.      CONCLUSION.**

For the reasons stated in this memorandum, the Government submits that the probation officer has correctly calculated the guidelines and request that the Court impose a sentence of 24 months.  A sentence of 24 months is sufficient but not greater than necessary after consideration of the relevant sentencing factors.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY


BY: *s/ Amy Bower*
Amy F. Bower (ID#11784)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
843-727-4381
Amy.Bower@usdoj.gov


January 14, 2025
Charleston, South Carolina